FILED

MAY 22 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN BARTON LASH,<br>171 Hanover St.<br>Glenrock, PA 17327-1022,<br><br>PLAINTIFF<br><br>vs.<br><br>OFFICER JENNIFER LEMKE,<br>*in her individual capacity*,<br>United States Park Police<br>1901 Anacostia Dr., SE<br>Washington, DC 20019,<br><br>and<br><br>SERGEANT TODD REID,<br>*in his individual capacity*,<br>United States Park Police<br>1901 Anacostia Dr., SE<br>Washington, DC 20019,<br><br>DEFENDANTS | Case: 1:12-cv-00822<br>Assigned To : Bates, John D.<br>Assign. Date : 5/22/2012<br>Description: Civil Rights-Non Employ.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### THE PARTIES

1.   Plaintiff Ryan Barton Lash is a citizen of Pennsylvania residing at 171 Hanover St., Glenrock, PA.

2.   Defendant Officer Jennifer Lemke is and was, at all times relevant to this Complaint, employed by the United States Park Police, a subagency within the United States Department of the Interior. At all times relevant to this Complaint, Officer Lemke was acting under color of federal law within the scope of her employment at the United States Park Police. Officer Lemke is sued in her individual capacity.

1

3. Defendant Sergeant Todd Reid is and was, at all times relevant to this Complaint, employed by the United States Park Police, a subagency within the United States Department of the Interior. At all times relevant to this Complaint, Sergeant Reid was acting under color of federal law within the scope of his employment at the United States Park Police. Sergeant Reid is sued in his individual capacity.

## JURISDICTION AND VENUE

4. This action arises under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

5. This Court has jurisdiction over the parties and subject matter pursuant to 28 USC § 1331.

6. Venue is proper in this district pursuant to 28 USC § 1391(b)(2) because the events or omissions giving rise to this action occurred in the District of Columbia.

## STATEMENT OF FACTS

7. On January 29, 2012, Plaintiff was in McPherson Square participating in the Occupy DC vigil.

8. A group of Park Police officers approached the tent in which Plaintiff was located and stated that they were posting notices. Plaintiff responded that he already had received plenty of notices.

9. A Park Police officer then threw a notice into the tent where Plaintiff was located. Plaintiff threw the notice out of a corner of the tent. A Park Police officer picked up from the notice from the ground and threw it back into the tent where Plaintiff was located.

10. The notices being handed out by the Park Police officers concerned the government's intent to enforce the no-camping regulations in the coming days.

11. Plaintiff emerged from the tent and told the group of Park Police officers that he would be participating in a "sleep strike" and would not be going to sleep for days. The group of Park Police officers then walked away.

12. Plaintiff then started chanting "Fuck your notices" and removed two notices from other tents. Officer Jennifer Lemke informed Plaintiff that if he took down another notice, he would be arrested for disorderly conduct. After this warning, Plaintiff ceased taking down the notices and walked away.

13. As Plaintiff is walking away, he said to a group of Park Police officers, "You want us to clean up the trash in the park, right? Well here's your fucking trash you fucking pigs." Plaintiff then crumpled up the notices he had removed and placed them in the trash.

14. Although Plaintiff was complying with Officer Lemke's order not to remove any more notices, Officers Jennifer Lemke, Frank Hilsher, and Tiffany Reed and Sergeant Todd Reid began to approach Plaintiff as he was standing on a paved area in the southern side of McPherson Square.

15. Plaintiff did not know why the group of Park Police officers were coming up to him so he said "Why are you coming at me?" and began walking around the park. Plaintiff was scared because he had seen Park Police assault protesters before. Although Plaintiff was walking around the park, he did not attempt to run away or escape.

16. The Park Police officers did not explain to Plaintiff why they were approaching him. Plaintiff did not think that the Park Police were going to place him under arrest because he had complied with the order not to take down any more notices. However, had the Park Police simply told Plaintiff that he was going to be arrested, he

would have put his arms behind his back. Plaintiff was walking away because he thought that would help defuse the situation.

17. When Officers Lemke, Hilsher, and Reed, and Sergeant Reid got close to Plaintiff, Plaintiff put his hands in the air and said "I've done nothing wrong."

18. Officer Reed approached Plaintiff from behind and, without warning, grabbed his arms and pulled them behind his back. Neither Officer Reed nor any of the other law enforcement officials present told Plaintiff at any time during the incident in the park that he was under arrest or asked him to put his hands behind his back.

19. Startled, Plaintiff moved his arms forwards. Because he was being grabbed from behind, Plaintiff did not know who was touching him. Officer Reed then grabbed Plaintiff's neck and left arm while Officer Hilsher grabbed Plaintiff's right arm.

20. When Plaintiff noticed it was Park Police officers grabbing him, he allowed the officers to place his arms behind his back.

21. While Officers Reed and Hilsher were holding onto Plaintiff, Officer Lemke approached Plaintiff from behind and pulled the trigger on her Taser, resulting in two probes becoming implanted into Plaintiff's back and a charge being carried to Plaintiff's body, causing neuromuscular incapacitation.

22. Officer Lemke's use of the Taser caused Plaintiff to fall to the ground and experience vasovagal syncope.

23. While Plaintiff was on the ground, Officers Reed and Hilsher handcuffed Plaintiff.

24. Officer Lemke tased Plaintiff again after he was on the ground in handcuffs.

25. As he regained consciousness, Officers Reed and Hilsher lifted Plaintiff up to his feet and walked him to a patrol car.

26. Plaintiff asked to be transported to the hospital in an ambulance, but Officers Lemke and Hilsher refused and tried to force Plaintiff into the back of a patrol car.

27. After unsuccessfully trying to maneuver Plaintiff into the patrol car, Officer Hilsher moved Plaintiff behind the patrol car and bent him over the trunk. Plaintiff was feeling woozy and dizzy. The shocks from the Taser made Plaintiff feel like he was going to defecate.

28. Plaintiff then experienced another episode of vasovagal syncope and fell to the ground where his body began convulsing. Plaintiff had never experienced seizures before. As Plaintiff fell, he landed on his right hand, still in handcuffs, causing searing pain.

29. While Plaintiff was unconscious, Officers Lemke and Reed lifted Plaintiff to his feet.

30. As Plaintiff regained consciousness, Officer Lemke and an unknown Park Police officer walked Plaintiff to a transport wagon and placed him inside. The handcuffs on Plaintiff were very tight and Plaintiff loudly asked for the handcuffs to be eased. The pain caused Plaintiff to cry.

31. Plaintiff was then transported to George Washington Hospital.

32. At the hospital, the Taser probes were removed from Plaintiff's back and he was instructed to return to the hospital if he was experiencing chest pain.

33. Plaintiff had the sensation of "pins and needles" along his right thumb and down to his wrist. He told one of the nurses at the hospital about this sensation.

34. After leaving the hospital and being transported to District 1, Plaintiff began experiencing sharp chest pain and feeling dizzy. Plaintiff felt woozy, his chest felt

tight, and he had a hard time breathing. Plaintiff asked to be taken back to the hospital. Plaintiff then lost consciousness again.

35. When he awoke, he was told by a police officer that he had been unconscious for about three to four minutes. Plaintiff was confused about who he was and what was going on.

36. Plaintiff was diagnosed with chest pain, unspecified.

37. Plaintiff told a nurse that he could not feel anything behind his right thumb. He still does not has no feeling from right below the fingernail of his right thumb to his wrist area.

38. Plaintiff continues to this day to feel "ghost pains" on his back where he was shocked and around his right wrist along the thumb where it is still numb. Plaintiff sometimes gets the sensation of "pins and needles" along his right thumb down to his wrist. Plaintiff sometimes hears non-existent clicks and feels pain where the Taser probes had attached to him. Sometimes Plaintiff is unable to even hold conversations with people due to the physical and mental trauma of being tasered. Plaintiff often suffers from panic attacks when he talks about the incident.

39. In a *Gerstein* affidavit, Officer Lemke swore under penalty for making a false statement that Plaintiff shoved Officers Reed and Hilsher, and that Officer Lemke said "stop resisting or I will tase you."

40. In truth and in fact, Plaintiff did not shove Officers Reed and Hilsher.

41. In truth and in fact, Officer Lemke never said "stop resisting or I will tase you" and never warned Plaintiff that he should stop resisting or that he was about to be tased.

42. Officer Lemke made the foregoing false statements in order to cover up the use of excessive force.

43.     At the time Officer Lemke tased Plaintiff, Plaintiff was not posing a threat to law enforcement or anyone else.  Plaintiff was unarmed and surrounded by police officers.

44.     Officer Lemke tased Plaintiff in an attempt to make it easier for officers to handcuff him and not because Plaintiff posed a threat to her or anyone else.

45.     Taser training materials, with which, on information and belief, both Officer Lemke and Sergeant Reid were familiar, state: "ONLY USE TO STOP A THREAT.  NEVER USE FOR PHYSICAL COERCION."

46.     Sergeant Reid was the lead officer in charge at the time that Officer Lemke tased Plaintiff.  As the lead officer in the field, Sergeant Reid was responsible for proper command and control.

47.     Sergeant Reid failed to instruct or deploy in any meaningful way Officer Lemke or the other officers involved in apprehending Plaintiff.

48.     Sergeant Reid failed to intercede on Plaintiff's behalf despite the fact that Sergeant Reid had ample opportunity to stop Officer Lemke from tasering Plaintiff both the first and second times.

## COUNT I:
## FIRST AMENDMENT (*BIVENS*)
### (All defendants)

49.     This Count realleges and incorporates by reference paragraphs 7-48.

50.     Sergeant Reid ordered Officer Lemke to arrest Plaintiff in retaliation for Plaintiff calling the Park Police officers "fucking pigs."  Were it not for Plaintiff's exercise of his constitutional right to criticize the police, Sergeant Reid would not have ordered Plaintiff to be arrested.

7

51. Officer Lemke used excessive force in arresting Plaintiff in retaliation for Plaintiff calling the Park Police officers "fucking pigs." Were it not for Plaintiff's exercise of his constitutional right to criticize the police, Officer Lemke would not have used the amount of force that she used against Plaintiff.

## COUNT II:
## FOURTH AMENDMENT (*BIVENS*)
## (All defendants)

52. This Count realleges and incorporates by reference paragraphs 7-48.

53. The degree of force used by Officer Lemke was unreasonable under the circumstances.

54. Officer Lemke's use of excessive force in the course of arresting Plaintiff violated the Fourth Amendment and was a direct and proximate cause of his injuries.

55. Sergeant Reid's failure to supervise the situation or intervene in Officer Lemke's use of excessive force in the course of arresting Plaintiff violated the Fourth Amendment.

56. As a direct and proximate cause of Defendants' actions, Plaintiff suffered injuries including, but not limited to, pain and suffering, numbness, anxiety, humiliation, embarrassment, mental anguish, and medical costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues which may be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare Defendants' conduct to be unlawful;

(2) Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

(3) Grant Plaintiff an award of attorney fees and other litigation costs reasonably incurred in this action;

(4) Grant Plaintiff such other and further relief which the Court deems proper.

Respectfully Submitted,

_____
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213

*Counsel for Plaintiff*